T.C. Summary Opinion 2001-43


UNITED STATES TAX COURT


KIMBERLY A. PILGRAM, a.k.a. KIMBERLY A. COFFIEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18383-99S.                    Filed March 29, 2001.


Kimberly A. Pilgram, pro se.

<u>Ross M. Greenberg</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1998, the taxable year in issue.

Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1998 in the amount of $2,761.

The issues for decision are as follows:

(1) Whether petitioner is entitled to the child care credit as claimed on her income tax return. We hold that she is not.

(2) Whether petitioner is entitled to the earned income credit as claimed on her income tax return. We hold that she is not.

(3) Whether petitioner's filing status is head-of-household as claimed on her income tax return. As explained below, we do not decide this issue because it has no tax effect.

Background

Some of the facts have been stipulated, and they are so found. Petitioner resided in Jacksonville, Florida, at the time that her petition was filed with the Court.

In June 1985, petitioner married Randal Pilgram (Mr. Pilgram). Petitioner and Mr. Pilgram remained married as of the date of trial of this case.

Petitioner and Mr. Pilgram have one child, a son named Randal II (Randy), who was born in January 1989.

At the time when petitioner and Mr. Pilgram were married, Mr. Pilgram was a member of the Armed Forces on active duty with the U.S. Navy. Mr. Pilgram remained on active duty until his retirement from the U.S. Navy in January 2000.

From January to August 1998, Mr. Pilgram was stationed at a U.S. Navy base in Sigonella, Sicily. At the end of August, Mr. Pilgram commenced sea duty aboard the U.S.S. Enterprise, a nuclear-powered aircraft carrier. Mr. Pilgram remained at sea until his retirement from the U.S. Navy.

From January to May 1998, petitioner and Randy lived on the U.S. Navy base in Sigonella with Mr. Pilgram. At the end of May, petitioner and Randy returned to the United States for medical reasons. Upon their return, petitioner and Randy lived with petitioner's parents in Port Richey, Florida. Thereafter, at the end of August, petitioner and Randy obtained family housing at the Naval Air Station in Jacksonville, Florida, where they lived for the balance of 1998.

Throughout their married life, petitioner and Mr. Pilgram typically filed joint Federal income tax returns. For 1998, however, they filed separate returns. They did so only after petitioner consulted with a military tax preparer at the Jacksonville Naval Air Station. The military tax preparer advised petitioner that because Mr. Pilgram was deployed at sea, it would be advantageous for them to file separately, with petitioner utilizing head-of-household filing status. Based on this advice, and utilizing commercial tax preparation software, petitioner prepared and filed her own return and prepared and

mailed to Mr. Pilgram a return for his signature, which he signed and filed.

On her income tax return, Form 1040, for 1998, petitioner claimed head-of-household filing status, naming Randy as the qualifying person. Petitioner did not claim a deduction for a dependency exemption for her son. Petitioner reported total income in the amount of $12,927 and tax in the amount of $596. Petitioner did not claim a child tax credit, see sec. 24(a), but she did claim a credit for child care expenses in the amount of $596, thereby reducing her tax liability to zero. Petitioner also claimed an earned income credit in the amount of $2,165, naming Randy as the qualifying child.

On his income tax return, Form 1040, for 1998, Mr. Pilgram claimed married-filing-separate filing status. Mr. Pilgram also claimed a deduction for a dependency exemption for Randy, as well as a child tax credit. He did not, however, claim a credit for child care expenses or an earned income credit.

Upon audit, respondent determined a deficiency in petitioner's income tax in the amount of $2,761.[2] In determining the deficiency, respondent: (1) Adjusted petitioner's filing status from head-of-household to married filing separately; (2)

---

[2] The record does not disclose whether respondent examined Mr. Pilgram's return, and, if so, whether any deficiency was determined.

disallowed the credit for child care expenses; and (3) disallowed the earned income credit.

Discussion

### A. Tax Credits

Section 21(a) allows a credit for child care expenses. However, section 21(e)(2) provides that if a taxpayer is married at the close of the taxable year, the credit is allowable only if the taxpayer files a joint return with his or her spouse. See sec. 1.44A-3(a), Income Tax Regs.

Section 32(a) allows an earned income credit. However, section 32(d) provides that in the case of an individual who is married, an earned income credit is allowable only if a joint return is filed for the taxable year. See sec. 1.32-2(b)(2), Income Tax Regs.

A taxpayer's marital status is determined under section 7703.[3] As relevant herein, section 7703(a)(1) provides that the determination of whether an individual is married shall be made as of the close of her taxable year. In the present case, petitioner was, in fact, married as of December 31, 1998. That

---

[3] Formerly, the operative sec. was sec. 143. See sec. 143, prior to its amendment by sec. 1301(b) of the Tax Reform Act of 1986 (TRA '86), Pub. L. 99-514, 100 Stat. 2085, 2603. In 1986, however, sec. 143 was redesignated as sec. 7703. See TRA '86, sec. 1301(j)(2), 100 Stat. 2657. The redesignation did not effect any substantive change. We note that the operative regulations under secs. 21 and 32 still reference sec. 143. See secs. 1.44A-3(c), 1.32-2(b)(2), Income Tax Regs.

being the case, sections 21(e)(2) and 32(d) serve to disallow the credit for child care expenses and the earned income credit because petitioner did not file a joint return with Mr. Pilgram for 1998.[4]

Petitioner, however, appears to rely on section 7703(b).[5] That section provides that certain married individuals who live apart will not be considered as married. Thus, if--

> (1) an individual who is married * * * and who files a separate return maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a child * * * with respect to whom such individual is entitled to a deduction for the taxable year * * *,
>
> (2) such individual furnishes over one-half of the cost of maintaining such household during the taxable year, and
>
> (3) during the last 6 months of the taxable year, such individual's spouse is not a member of such household,

[then] such individual is not considered as married.

---

[4] Sec. 32(d) expressly makes sec. 7703 applicable in determining whether an individual is married. Sec. 21(e) effectively incorporates sec. 7703 into sec. 21. See sec. 21(e)(1), (3), and (4).

[5] Petitioner does not cite sec. 7703(b). Rather, she relies on IRS Pub. 596, Earned Income Credit, and the portion thereof dealing with married persons who live apart. We note that such portion of the publication is based squarely on sec. 7703(b).

At first blush, petitioner appears to fall within the literal language of section 7703(b).[6]  However, it is clear that the section is not applicable to petitioner.  In this regard, section 1.7703-1(b)(5), Income Tax Regs., provides that "An individual's spouse will be considered to be a member of the household during temporary absences from the household due to special circumstances."  The regulation goes on to provide that "A nonpermanent failure to occupy such household as his abode by reason of * * * military service shall be considered a mere temporary absence due to special circumstances."[7]

In the present case, Mr. Pilgram was admittedly away at sea for an extended period of time.  Nevertheless, his absence from the household is considered temporary because it was reasonable to assume that he would return to the household and occupy it as

---

[6] Respondent implies that petitioner may not satisfy the requirement that the taxpayer furnish over one-half of the cost of maintaining a household during the taxable year because petitioner paid no rent or utilities for military housing during 1998.  However, we do not regard the matter as determinative.

[7] The provisions of sec. 1.7703-1(b)(5), Income Tax Regs., are discussed in IRS Pub. 501, Exemptions, Standard Deduction, and Filing Information.  There is a cross-reference to that matter in the discussion regarding married individuals living apart in the 2000 edition of Pub. 596, Earned Income Credit.  The record does not disclose whether the same cross-reference appeared in the 1998 edition of Pub. 596 upon which petitioner relies.  However, even if the publication were misleading, the sources of authoritative law in the tax field are the statute and regulations and not Government publications.  See Casa De La Jolla Park, Inc. v. Commissioner, 94 T.C. 384, 396 (1990), and cases cited therein.

his abode after the completion of his sea duty, and he did in fact do just that.[8]

Based on the foregoing, we hold that petitioner was married as of the close of 1998 and that, as a consequence, she is not entitled to either a credit for child care expenses or the earned income credit.  Secs. 21(e)(2), 32(d); Chiosie v. Commissioner, T.C. Memo. 2000-117; Casey v. Commissioner, T.C. Memo. 1988-170, affd. without published opinion 876 F.2d 899 (11th Cir. 1989).

B. Filing Status

Respondent, in determining the deficiency in issue, adjusted petitioner's filing status, disallowed the credit for child care expenses, and disallowed the earned income credit.  Given the fact that the sum of (1) the credit claimed by petitioner for child care expenses and (2) the earned income credit claimed by her equals $2,761 (i.e., $596 + $2,165) and that such sum equals

---

[8] The paradigm for the "deemed single" rule of sec. 7703(b) is the taxpayer who has been deserted or abandoned by her spouse and is therefore no longer part of a functioning marital unit. The limitation on the literal application of sec. 7703(b) that is found in sec. 1.7703-1(b)(5), Income Tax Regs., contemplates a marital unit that remains intact, notwithstanding the temporary absence of one spouse from the household due to special circumstances, such as military service.

Insofar as sec. 21 is concerned, the analog to sec. 7703(b) is found in sec. 21(e)(4), and the analog to sec. 1.7703-1(b)(5), Income Tax Regs., is found in the legislative history of sec. 44A, the predecessor of sec. 21.  See H. Rept. 94-658, at 146-149 (1975), 1976-3 C.B. (Vol. 2) 695, 838-841; S. Rept. 94-938, at 132-135 (1976), 1976-3 C.B. (Vol. 3) 49, 170-173; Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 135-139.

the amount of the deficiency, it would appear that the change in filing status from head-of-household to married filing separately has no tax effect.[9]  Accordingly, we need not decide whether respondent erred in changing petitioner's filing status because our decision would not have any effect on the deficiency in dispute.  See LTV Corp. v. Commissioner, 64 T.C. 589, 594-595 (1975); Cohen v. Commissioner, 20 B.T.A. 647, 648 (1930) (it is not the duty of the Court to decide abstract or academic questions).  However, we observe that a taxpayer must be unmarried in order to qualify as a head of a household, sec. 2(b)(1), and that a taxpayer will be treated as not married if the taxpayer is so treated under section 7703(b).  See sec. 2(c).  Accordingly, a married taxpayer who does not come within the scope of section 7703(b) may not file as a head of a household.

Conclusion

We sustain the deficiency as determined by respondent in the notice of deficiency.  We do so because the law compels it.  However, we do so without enthusiasm.  As we observed at trial, petitioner strikes us as a conscientious taxpayer who takes her Federal tax responsibilities seriously.  Unfortunately, she did

---

[9] It may be that respondent underdetermined the amount of the deficiency in tax.  However, we do not consider such possibility because respondent never asserted any claim for an increased deficiency.  See sec. 6214(a).

not receive sound advice regarding the preparation of her 1998 return.

Reviewed and adopted as the report of the Small Tax Case Division.

In order to give effect to the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.